## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

TORRANCE JONES                          )
                                        )
                     Petitioner,        )
                                        )
          vs.                           )          Civil Case No.   07-673-DRH-PMF
                                        )
W. A. SHERROD, Warden,                  )
                                        )
                     Respondent.        )

### REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

This matter is before the Court following a December 29, 2009, evidentiary hearing at which petitioner appeared with appointed counsel Melissa Day of the Federal Defenders Office. Petitioner brought this §2241 petition seeking habeas relief from a prison disciplinary proceeding. Pending at this time is petitioner's motion for summary judgment (Doc. No. 32).

The factual findings set forth below are those which I found relevant and material. Any evidence in the record which is not referred to may be deemed not to fall into those categories. Additionally, some of the evidence was disputed, and the reader may presume that evidence relied on below was deemed to be more credible and persuasive than competing evidence not referred to.

Petitioner is a prisoner in the United States Bureau of Prisons (BOP). On August 31, 2006, he was housed at FCI-Miami, Florida. On that date, correctional officer Richard Loftus instructed petitioner to perform a task which petitioner refused to do because he considered it beyond his physical limitations. Petitioner was then directed to report to the lieutenant's office following which he was sent to a special housing unit (SHU). Loftus escorted petitioner to the SHU. The two of them exchanged unpleasantries along the way which then escalated to a more heated confrontation. Loftus

gained control of petitioner by pressing his arm against petitioner's throat which petitioner resisted by pushing Loftus.  Petitioner was eventually cuffed up and taken to the SHU.

Loftus prepared an incident report charging two violations: assaulting any person and refusing to obey a staff order.  The disciplinary process was delayed while law enforcement considered criminal charges against petitioner.  Petitioner received a copy of the incident report on August 31, 2006.   The unit disciplinary committee (UDC) did its investigation between September 20-27, following which charges were referred to a disciplinary hearing officer.  The UDC recommended serious sanctions, including a disciplinary transfer and extended segregated confinement.

The disciplinary hearing officer convened a hearing at FCI-Miami on October 23, 2006. Petitioner requested and was assigned a staff representative.  Petitioner identified a witness, an inmate named Green, from whom his staff representative took a statement.  By agreement, that statement was presented at the disciplinary hearing.  Green's evidence was deemed irrelevant because he was not a witness to the incident.  Rather, he testified to what he perceived to be bad blood between petitioner and Loftus. The staff representative viewed a video of the incident taken by a surveillance camera. Petitioner was not allowed to view the video due to security concerns.

The disciplinary hearing officer issued a written statement in which he  found petitioner guilty of both charges.  Petitioner lost 14 days of good time credit, spent time in disciplinary segregation and lost several privileges.   He was provided with a copy of the disciplinary officer's findings and conclusions.

Petitioner claims that his constitutional rights were violated in the following respects:

(1).    Procedural due process was denied by untimely service of the incident report and untimely hearings.

(2).    Due process was denied when petitioner was denied access to the surveillance video and his medical reports.

(3).    Due process was denied when petitioner could not call two witnesses: Jorge Masvidal and Yve St. Hilaire.

(4).    The combined errors and deprivations resulted in a finding which was not adequately supported by evidence and, therefore, arbitrary.

A writ of habeas corpus may be granted if an inmate is in custody in violation of the United States Constitution or its laws or treaties.   28 U.S.C. §2241(c)(3).   Inmates have a liberty interest in accumulated good time credits which may not be taken away without providing due process. *Wolf vs McDonnell*, 418 U.S. 539 (1974).

Due process is satisfied in prison disciplinary proceedings by providing the following: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) an opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by a fact finder of evidence relied on and reasons for any disciplinary action. *Id*.

The BOP has promulgated institutional guidelines regarding disciplinary proceedings.  Some pertain to the time in which certain events should occur.  "Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmates involvement in the incident."  28 C.F.R. § 541.15(a). Once charged, an inmate "is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident." 28 C.F.R. § 541.15(b).  That three-day limit may be extended "for a good cause shown by the inmate or staff and documented in the record of the hearing."  28 C.F.R. § 541.15(k).  "Staff may suspend disciplinary proceedings for a period not to exceed two calendar weeks while informal resolution is undertaken and accomplished."  28 C.F.R. 541.11, table 2.

Staff became aware of petitioner's incident on August 31, 2006.  The incident report was delivered to petitioner on September 13, 2006.  The UDC's action occurred on September 20, 2006, and the DHO hearing convened on October 23, 2006.  The hearing officer's written report finding petitioner guilty as charged was issued November 22, 2006.  Proceedings were suspended from August 31 through September 13, 2006 while investigators considered whether to pursue criminal charges against petitioner.

Staff member David Tosana was appointed to represent petitioner.  Mr. Tosana reviewed all documentary evidence, including petitioner's medical file; viewed the surveillance video; and interviewed Irvin Green, an inmate identified by petitioner. Tosana filed written summaries of the interview and his viewing of the video.

Petitioner believes that the failure to meet deadlines outlined in prison guidelines deprived him of due process.  Not so.  The guidelines are not mandatory and do not create a liberty envisioned by *Wolff vs McDonnell*.  *White vs Henman*, 977 F.2d 292, 295 (7th Cir. 1992).   In any event, the elapsed time created no prejudice which could amount to a finding that due process was denied. There is no support in the record that petitioner requested witnesses other than Green.  He argues that he did and the delay prejudice him because these inmates were transferred in the interim.  Even if there were some error which could be assigned to the failure to bring in those witnesses, it was not prejudicial in light of the hearing officer's findings.  Their testimonies would have made no difference in the outcome as they were consistent with other evidence actually relied on.

Petitioner was not entitled to view the surveillance video.   It is true that inmates are entitled to disclosure of exculpatory evidence.  *Chavis vs Rowe*, 643 F.2d 1281 (7th Cir. 1981).   Security concerns will override that interest, however. *Johnson vs Finnan*, 467 F.3d 693, 694 (7th Cir. 2006). The prison has a legitimate interest in keeping things such as the location of cameras, the scope of

each camera's coverage, and image resolution from inmates.   Both his staff representative and the hearing officer viewed the video.  His staff representative put petitioner's best argument concerning the evidentiary value of the video before the hearing officer.  The hearing officer explained his reasons for the probative value he assigned to the video.  There was no denial of due process.

Similarly, there was no denial of due process by restricting petitioner's access to his medical file.  His staff representative had access, and the hearing officer consulted it and made his findings regarding the medical evidence in his report.

Finally, the cumulative effect of all the rulings petitioner takes issue with does not rise to a due process deprivation.  It seems that petitioner's biggest problem is with the result the hearing officer reached and not with his methodology.  Due process does not require results which a reviewing court would find agreeable.  Petitioner was accorded due process in this disciplinary matter.

For the foregoing reasons, IT IS RECOMMENDED that petitioner's motion for summary judgment (Doc. No. 32) be DENIED and that judgment be entered against petitioner and in favor of respondent.

**SUBMITTED:    February 23, 2010     .**

  **S/ Philip M. Frazier**
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**