IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**TORRANCE JONES,**

**Petitioner,**

**v.**

**W.A. SHERROD, Warden,**

**Respondent.**                                                    **No.07-673-DRH**

MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

## I. Introduction

Before the Court is a Report and Recommendation ("the Report") (Doc. 49), issued pursuant to **28 U.S.C. §636(b)(1)(B)** by Magistrate Judge Frazier, which recommends dismissing Petitioner Torrance Jones' Petition for Writ of Habeas Corpus pursuant to **28 U.S.C. § 2241**(Doc. 1). Specifically, the Report recommends a denial of the habeas petition, concluding that Petitioner was not denied his due process during a prison disciplinary proceeding.

The Report was sent to the Parties, with a notice informing them of their right to appeal by way of filing objections by March 12, 2010. In accordance with the notice, Petitioner filed timely objections to the Report. Respondent has filed a response to those objections, standing by his argument in opposition to Petitioner's summary judgment motion. Because timely objections have been filed, this Court must undertake *de novo* review of the objected-to portions of the Report. **28 U.S.C.**

§ 636(b)(1)(B); F‍ED‍.R.C‍IV‍.P.72(b); S‍OUTHERN‍ D‍ISTRICT‍ OF‍ I‍LLINOIS‍ L‍OCAL‍ R‍ULE‍ 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may "accept, reject, or modify the recommended decision." *Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir. 1999). In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues for which specific objection has been made. *Id*. However, the Court need not conduct a *de novo* review of the findings of the Report for which no objections have been made. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985). Instead, the Court can simply adopt those findings. For the reasons discussed herein, the Court **ADOPTS** the findings and recommendations of the Report.

## II.  Background

This matter stems from a disciplinary hearing that occurred on October 23, 2006 while Petitioner was housed at FCI-Miami, Florida. Petitioner faced a disciplinary hearing due to actions filed in an incident report from August 31, 2006 involving correction officer Richard Loftus. While working on Loftus' work detail, Petitioner was sent to the special housing unit (SHU) after refusing to perform a task ordered by Loftus. Loftus escorted petitioner to the SHU but while in route to the unit, the two began exchanging words. Loftus ordered Petitioner to cuff up but Petitioner refused and Loftus attempted to gain control of Petitioner by pressing his arm against Petitioner's throat while Loftus sought to cuff Petitioner (Doc. 39 Ex. B at pp. 1, 10, 11, 15).

In response to the incident Loftus filed an incident report with two violations: assault and refusing to obey a staff order (*Id*. at p. 1). A disciplinary hearing was delayed while the Federal Bureau of Investigation and the United States Attorney's Office reviewed the matter for possible prosecution, but the hearing before he Unit Disciplinary Committee (UDC) was eventually held on September 20, 2006 after criminal prosecution was declined (*Id*. at p. 5). The committee referred the matter to the Discipline Hearing Officer (DHO).

The disciplinary hearing officer held a hearing on October 23, 2006. At that hearing, Petitioner requested a staff representative and one was appointed to him. The hearing broke until the afternoon so that Petitioner could speak with his appointed representative. Petitioner identified an inmate named Green who he wanted to use as a witness for his hearing (*Id*. at pp. 4-5; Doc. 50 at 26:9-27:18). Petitioner's representative met with Green and obtained his statement and Petitioner agreed to have his testimony presented through the statement rather than live testimony (Doc. 50 at 69:1-19). However, the DHO ultimately determined that Green's testimony was irrelevant as he had not witnessed the event for which Petitioner was facing charges. Instead, he testified about the relationship between Petitioner and officer Loftus. While Petitioner was not allowed to review the video tape for security reasons, his staff representative was allowed to view the video and present a statement as to the description of the video which the DHO reviewed before making her decision (*Id*. at 71:16- 72:10). A further description of the video was provided by Special Investigative Lieutenant Bob Wenzler which the DHO also

considered (Doc. 39, Ex. B at p. 11). However, the DHO did not view the video itself on orders from her superiors (Doc. 50 at 28:16 - 29:3).[1] The DHO ultimately found Petitioner guilty of the charges and, as a result, Petitioner lost 14 days good time credit, spent time in disciplinary segregation, and lost several other privileges.

Petitioner filed the current habeas petition after appealing his conviction. Petitioner claims that his constitutional rights were violated in four ways:

1. Procedural due process was denied by untimely service of the incident report and untimely hearings.

2. Due process was denied when Petitioner was denied access to the surveillance video and his medical reports.

3. Due process was denied when Petitioner could not call two witnesses: Jorge Masvidal and Yve St. Hilaire.

4. The combined errors and deprivations resulted in a finding which was not adequately supported by evidence and, therefore, arbitrary.

Petitioner filed a summary judgment motion (Doc. 32) which is currently pending before the Court. On December 21, 2009, Magistrate Judge Frazier held an evidentiary hearing on the issues of ability to call witnesses at the hearing and present evidence, particularly in the form of the surveillance video and medical reports. Both DHO Yida Posada and Petitioner's staff representative David Tosana

---

[1] While Judge Frazier noted in his Report that the DHO had viewed the surveillance video, the Court finds that DHO Pisada actually testified that she had not viewed the video tape as her superiors ordered her to review the statements of those who watched the video rather than review the video herself. While Judge Frazier notes in his Report that she had viewed the video, it appears to this Court that factual finding was a typo written in error.

testified at the hearing. Petitioner also testified.

Subsequent to the hearing, Magistrate Judge Frazier issued his Report recommending that Petitioner's habeas petition be dismissed. Judge Frazier determined that, based on the briefs and evidence presented both in written form and orally at the hearing, Petitioner's due process rights had not been violated.

### III. Discussion

Petitioner now objections to the following portions of the Report:

1. The factual findings made by Judge Frazier;

2. The finding that the hearing officer viewed the video and the Reports conclusion on that basis that there was no denial of due process;

3. The holding that the elapsed time of service of the incident report and hearing did not result in a violation of Petitioner's due process;

4. The holding that Petitioner's due process rights were not violated by restricting his access to his medical file; and

5. The holding that the cumulative effect of all the rulings Petitioner takes issue with does not rise to a due process violation.

**A. Factual Findings in the Report**

Petitioner first objects to the factual findings of Judge Frazier as stated in his Report. However, Petitioner fails to specifically discuss which factual findings he is objecting to, instead merely stating that the Report failed to "adequately consider the following relevant and material evidence" and then restates many of the same facts presented in his motion for summary judgment (Doc. 32). Petitioner does footnote several specific objections to factual findings. Petitioner notes that the Report erroneously stated that Petitioner had received an incident report on August

31, 2006 but acknowledges that the Report corrected the finding later in the recommendation with the correct date which Petitioner received the Report.  Further, Petitioner objects to the factual findings related to dates and when the hearing was held, although the Court finds that these findings appear to be merely typos which have no bearing on the ultimate findings of the Report.  Petitioner also disputes the Report's finding that staff representative Tosana reviewed all of the evidence.

Petitioner also notes that most of his objections are based on his version of the events.  Petitioner states that the facts presented in his Objections, which he believes are relative and material and which he believes Judge Frazier failed to take note of when issuing his Report, are derived from his own sworn testimony at the evidentiary hearing.  However, as Judge Frazier pointed out in his Report, his factual findings included the evidence he found relevant and material.  While Judge Frazier acknowledged that some evidence was disputed, his factual findings were based on the evidence which he found to be "more credible and persuasive than competing evidence."  Here, Petitioner merely seems to take umbrage with Judge Frazier's findings and the fact that Judge Frazier found other evidence more credible.  However, Petitioner fails to point out that Judge Frazier's factual and credibility findings were inaccurate or discuss how they were inaccurate, other than the typos previously noted.

This Court is reluctant to question Judge Frazier's credibility assessments as he was in the best position "to observe the verbal and nonverbal behavior of the witnesses[,]…[including their] reactions and responses to the

interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture, and body movements." ***Kraushaar v. Flanigan*, 45 F.3d 1040, 1052-53 (7th Cir. 1995) (quoting *United States v. Nururdin*, 8 F.3d 1187, 1194 (7th Cir. 1993))**. Further, having reviewed the record and transcripts of the evidentiary hearing, the Court agrees with Judge Frazier's factual and credibility determinations as evidenced by this Court's own findings of fact.

**B.    Video Surveillance**

Petitioner next objects to the Report's factual finding that the DHO reviewed the surveillance footage of the incident involving Petitioner and Loftus and assigned probative value to the footage.  Petitioner argues that the Report incorrectly finds that the DHO viewed the video but the evidence presented at the evidentiary hearing shows that the video was not viewed.  Petitioner adds that since the Report includes factual errors, that the Report's legal conclusion could not be correct since it was based on the belief that the DHO viewed the video.

The Court acknowledges that the Report does contain a factual error in stating that the DHO viewed the video.  At the evidentiary hearing, the DHO clearly admitted that she did not view the video tape before making her decision (Doc. 50 at 50: 3-25).  Further, the Government admitted in its own briefings that DHO Posada did not view the tape (Doc. 39 p.9).  However, after reviewing the Report's findings, this factual error in the Report seems to be merely a typo or oversight on Magistrate Judge Frazier's part.  As it is a typo, it is clear to this Court that Judge

Frazier did not rely on that fact as a basis for his conclusion that the failure to view the video tape was a denial of due process, so the Court finds no legitimate reason to remand the Report back to Judge Frazier for further consideration.

Further, the Court finds that Petitioner's due process rights were not violated.  Prisons maintain due process rights under the Fourteenth Amended even while in prison.  **Scruggs v. Jordan, 485 F.3d 934, 938 (7th Cir. 2007)**.  Due process requires that a prisoner subjected to a prison disciplinary hearing be given: "(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action."  **Id. (quoting Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir. 1992)); see also Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)**.

Here, Petitioner objects to the Report's findings because he continues to argue that the DHO should have viewed the video of the altercation between Petitioner and officer Loftus before reaching her decision.  It does not appear that Petitioner is objecting to the Reports finding that Petitioner's due process rights were not violated by the refusal to all him to review the tapes, only that the DHO should have viewed the video.  It is apparent that Petitioner's rights were not violated by the refusal to allow Petitioner to view the video as the security concerns of the prison

overrides Petitioner's right to the disclosure of exculpatory evidence. ***Johnson v. Finnan*, 467 F.3d 693, 694 (7th Cir. 2006);** *Piggie v. Cotton*, **344 F.3d 674, 678 (7th Cir. 2003)**. Further, the DHO's failure to view the video also did not violate Petitioner's due process rights. The disciplinary board's findings need only be support by "some evidence in the record." ***Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quoting *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2663, 68 L.Ed.2d 356 (1985))**. The decision must be devised from a "modicum of evidence" and even meager evidence is upheld "so long as 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" ***Id.* (quoting *Hill*, 472 U.S. at 455, 457, 105 S.Ct. at 2774-75);** *see also Scruggs*, **485 F.3d at 941.** Further the exculpatory evidence need only be considered "to the extent that it undermines the reliability of the evidence relied upon by [the DHO]." ***Scruggs*, 485 F.3d at 941 (citing *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996))**.

      Here, the DHO did not review the surveillance tape of the incident herself but instead relied on testimony of a witness at the scene as well as the testimony of two staff members who had watched the video, including Petitioner's staff representative (Doc. 50 at 18:8-15). Both statements were consistent, stating that Petitioner pushed officer Loftus away from him while refusing to be cuffed. Petitioner himself also admitted in the hearing that he refused to be handcuffed and pushed Loftus away from him (*Id*.; Doc. 39 Ex. B at p. 4). Further, the Court notes

that the DHO did not review the surveillance tape because she was directed by her superior to rely on the witness reports and not the surveillance tape. Thus, the Court agrees with the rationale provided by Magistrate Judge Frazier and finds that Petitioner did not suffer any violation of his rights involving the surveillance tape.

**C.      Timing of Incident Report and Hearings**

Petitioner further objects to the Report's conclusion that the elapsed time in receiving the incident report and holding the disciplinary hearing did not result in a due process violation. Specifically, Petitioner argues that the failure to provide Petitioner with an incident Report within twenty-four hours and to hold a timely disciplinary hearing as defined under **28 C.F.R. § 541.15**.[2] Petitioner argues that the requirements promulgated for BOP disciplinary procedures are mandatory, however the Court agrees with the Report's findings that the elapsed time does not constitute a violation of Petitioner's due process rights. The failure to comply with procedural rules does not in and of itself equal a Constitutional violation. ***White v. Henman*, 977 F.2d 292, 295 (7th Cir. 1992);** ***Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001).** Further, Petitioner received a copy of his incident report well before his hearing so the requirements Due Process Clause have been met in this

---

[2] Under the BOP's promulgated guidelines regarding disciplinary hearings, "[s]taff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmates involvement in the incident." **29 C.F.R. § 541.15(a)**. Once charged, an inmate "is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident." **28 C.F.R. § 541.15(b)**. That three-day limit may be extended "for a good cause shown by the inmate or staff and documented in the record of the hearing." **28 C.F.R. § 541.15(k)**. "Staff may suspend disciplinary proceedings for a period not to exceed two calendar weeks while informal resolution is undertaken and accomplished." **28 C.F.R. § 541.11, table 2**.

case. *See Northern v. Hanks*, **326 F.3d 909 (7th Cir. 2003)**. While Petitioner's hearing was postponed, the delay was due to the FBI's investigation of the incident and was postponed until the investigation was completed and it was determined that further prosecution would not be taken. Petitioner was advised of the delay and the reasoning for the delay was included in the DHO's Report as is required by the BOP's guidelines (Doc. 39, Ex. B at p.5).

Petitioner also objects to the Report's finding that there was no support in the record for Petitioner's position that he requested witnesses other than prisoner Green. Petitioner maintains that he himself testified that it was well known that he had two witnesses. However, the Court has also found that Magistrate Judge Frazier was in the best position to determine the credibility of the witnesses and there was also testimony from the other two witnesses that Petitioner only requested Green as a witness. Further, the Court finds that any other witness testimony would not have affected the findings of the DHO as there was overwhelming evidence that Petitioner had pushed Loftus after refusing to cuff up as ordered, well meeting the requirement that the findings of the DHO be supported by "some evidence." Accordingly, the Court agrees with the findings in the Report and finds that there were no violations of Petitioner's due process rights.

**D.     Medical File**

Petitioner also objects to the Report's conclusion that there was no denial of due process by restricting the Petitioner's access to his medical file. Petitioner maintains that the medical reports showed that Petitioner sustained

injuries consistent with his version of events and was material to his guilt. Petitioner also argues, as he did in his motion, that he should have been provided with the exculpatory photographs. Here, however, while Petitioner might not have seen the medical file, the Report concluded that his staff representative had access to the document and the DHO specifically stated that she reviewed the document in making her decision (Doc. 50 at 16:5-17:12).[3] Further, to the extent that Petitioner failed to receive a copy of the material, the Court finds that the error was harmless. As has previously been pointed out, the DHO relied on several, substantial pieces of evidence which supported her finding and thus her decision was supported by "some evidence".

**E.   Cumulative Effect of Rulings**

Petitioner, lastly, objects to the Reports finding that the cumulative effect of the rulings Petitioner takes issue with does not rise to a due process violation. Petitioner does not specifically state what he objects to in this finding or how Judge Frazier's conclusion was erroneous or wrongly decided. Instead, Petitioner states that he maintains that there were multiple violations of his due process which resulted in an arbitrary finding of guilt. Again, Petitioner is merely taking umbrage with Judge Frazier's findings and disagreeing with his ultimate conclusion that Petitioner's rights were not violated.

However, as has been previously discussed throughout this Order, the

---

[3] While Posada admitted that the medical report was not listed in her file, that was merely an oversight as she did review the file and found that it was irrelevant.

Court has looked over the record and the parties' arguments and agrees with the findings in Judge Frazier's Report. The Court finds that Petitioner's rights were not violated by the refusal of the DHO to allow Petitioner to review the surveillance video or his medical records, nor by the DHO's decision to not view the video independently or Petitioner's failure to call certain witnesses. Thus, the Court finds that Petitioner's due process rights were not violated in this case.

### IV.  Conclusion

Accordingly, the Court overrules Petitioner's Objections (Doc. 53) and **ADOPTS** the Report (Doc. 49). Accordingly, Petitioner Jones' Motion for Summary Judgment (Doc. 32) and his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) is hereby **DENIED**. The Clerk to enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 28th day of September, 2010.

/s/     David R Herndon
**Chief Judge**
**United States District Court**